UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRAVOGRAND, INC.,

Plaintiff, Hon. Ellen S. Carmody

v. Case No. 1:06-CV-281

BISON REALTY, LLC, et al.,

Defendants.
_______________________________/

## OPINION

This matter is before the Court on Defendants' Motion to Compel Arbitration. (Dkt. 17). On June 6, 2006, the parties consented to proceed in this Court for all further proceedings, including trial and an order of final judgment. 28 U.S.C. § 636(c)(1). By Order of Reference, the Honorable Richard Alan Enslen referred this case to the undersigned. (Dkt. #25). For the reasons articulated below, Defendants' motion is **granted** and this matter stayed pending completion of arbitration.

## BACKGROUND

In 2001, the parties entered into twenty-two separate lease agreements, pursuant to which Plaintiff obtained the right to operate twenty-two Burger King restaurants. (Complaint, Exhibit A). Each of these leases contain the following provision:

> Right of First Refusal. Until the earlier of (a) the fifth (5th) anniversary of the Commencement Date, or (b) the date either Dan Trierweiler or William Bishop die owning an equity interest in Landlord (the "Trigger Date"), if Landlord makes a bona-fide offer to a third party, or receives a bona-fide offer from a third party which is acceptable to Landlord, for sale or transfer of the Premises, Landlord shall notify Tenant of the sale

> or transfer, the name of the offeror, the offered consideration and provisions of the offer. Within thirty (30) days after receipt of Landlord's notice, Tenant may elect by notice to Landlord to purchase the Premises, for the consideration upon the other provisions stated in Landlord's notice; except that title shall close the later of thirty (30) days after Tenant elects to purchase or the date agreed upon [by] the offeror. Should Tenant fail to exercise this right to purchase within the time and in the manner required above, or waives such in writing, Landlord shall be free to consummate the sale or transfer to the named offeror for the consideration upon the other provisions set forth in Landlord's notice to Tenant; however, Landlord agrees that such sale or transfer shall be subject to the provisions of this Lease, excluding this right of first refusal. If such sale or transfer is not consummated within six (6) months after the expiration of the earlier of the date Tenant fails to exercise its right as hereinabove required or the date Tenant waives such right in writing, the rights granted to Tenant in this Article shall once again apply to the offer described above as well as to any new offer.

(Complaint, Exhibit A, ¶ 33.1).

On August 17, 2005, Defendants and CNLRS Acquisitions, Inc. executed a contract for the sale of twenty-eight separate parcels of property, including the twenty-two parcels which are the subject of the leases described above. (Complaint, Exhibit B). On September 16, 2005, Defendants notified Plaintiff of the existence of this agreement. (Complaint, Exhibit C). On September 29, 2005, Defendants and CNLRS executed an amended sales agreement. (Complaint, Exhibit F). Plaintiff received notice of this amended agreement the same day. (Complaint at ¶ 18).

On October 27, 2005, Plaintiff notified Defendants of its intention to exercise its right of first refusal to purchase the twenty-two properties which it was presently leasing from Defendants. (Complaint, Exhibit G). According to Plaintiff, it submitted to Defendants on November 3, 2005, the earnest money deposits for each of the twenty-two parcels of property it sought to purchase. (Complaint at ¶ 20). Defendants assert that "[s]oon after exercising its Right of First Refusal as to the twenty-two

properties, Bravogrand took the position that a closing would be contingent upon its ability to raise funds and secure financing." (Dkt. #16 at 4).

On November 9, 2005, Defendants informed Plaintiff that "[t]he Right of First Refusal does not contemplate that Bravogrand has any right to exercise and have a closing contingent upon financing. The Landlords therefore consider the conditional exercise of the Right of First Refusal a nullity." (Complaint, Exhibit H). Plaintiff disputes that it failed to properly exercise its Right of First Refusal. In an attempt to resolve their disagreement regarding Plaintiff's purported exercise of its Right of First Refusal, the parties agreed to follow certain procedures in an attempt to facilitate the sale of the twenty-two properties in question. (Dkt. #16, Exhibit 1). This agreement expressly provided that:

> Neither the Landlord nor the Tenant waive or relinquish any claim, counterclaim, or defense in connection with the Right of First Refusal and both are proceeding with the full reservation of rights. This letter shall not be used as an indication of interpretation of the Right of First Refusal or the obligation of either party, in law or in equity, in connection therewith.

*Id.*

The terms of this agreement were subsequently modified, namely to repeatedly extend the date by which Plaintiff must close the sale of the twenty-two properties in question. (Dkt. #16, Exhibits 2-3). The parties were, however, unable to consummate the transaction. On March 23, 2006, Defendants informed Plaintiff that it "failure to close in accordance with the terms of the Right of First Refusal as set forth in paragraph 33 of the Leases dated October 15th, 2001, constitutes a breach of the same." (Dkt. #4, Exhibit I). Defendants further informed Plaintiff of its intention to invoke the arbitration provision of the subject Leases. *Id.* Plaintiff in turn initiated the present action on April 26, 2006. (Dkt. #1).

In its complaint, Plaintiff asserts that its October 27, 2005 notification to exercise its Right of First Refusal created twenty-two separate contracts, which Defendants subsequently breached. *Id.* Defendants deny "that twenty-two separate contracts came into existence as a result of Bravogrand's election for the reason that the Right of First Refusal contained in each of the subject Leases dictated the terms of the purchase and no other contracts were created or executed by the parties." (Dkt. #10 at 7). Defendants have now moved to compel arbitration of Plaintiff's claims.

**ANALYSIS**

Pursuant to the Federal Arbitration Act, "an agreement in writing to submit to arbitration an existing controversy arising out of. . .a contract evidencing a transaction involving commerce. . .shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The transaction between the parties fits within the definition of commerce, as defined by federal law, a conclusion not disputed by the parties. *See* 9 U.S.C. § 1. Accordingly, Plaintiff must submit its claims to arbitration if (a) there exists a "valid agreement to arbitrate," and (b) "the specific dispute falls within the substantive scope of the agreement." *Harmer v. Doctor's Associates, Inc.*, 781 F.Supp. 1225, 1228 (E.D.Mich. 1991) (citations omitted).

The arbitration clause of the leases in question provides as follows:

> Arbitration. Any controversy relating to the terms and conditions of this Lease, other than claims relating to nonpayment of Rent, or to recover possession of the Premises, shall be settled by arbitration in Grand Rapids, Michigan under the Michigan Arbitration Act, MCLA 600.5001 et seq., and the rules of the American Arbitration Association. Judgment and a decision upon the award as made may be entered in any court having jurisdiction. The decision of the arbitrator shall be final and binding and a condition precedent to any right of legal action. The cost of the arbitration and any expenses or costs related to the arbitration shall be divided equally between the parties to the arbitration.


(Dkt. #4 at 13).

The parties do not dispute the validity of the leases or the arbitration clauses contained therein. Thus, the question is whether the present dispute falls within the scope of the arbitration clause. Plaintiff asserts that its exercise of the right of first refusal created twenty-two contracts - separate and distinct from the subject leases - which Defendants subsequently breached. Defendants counter that Plaintiff failed to properly exercise the right of first refusal. Defendants further assert that "the Right of First Refusal contained in each of the subject Leases dictated the terms of the purchase and no other contracts were created or executed by the parties."

The Court fails to discern how Plaintiff's claims can be resolved without reference in the first instance to the Right of First Refusal clause articulated in the subject leases. Whether Plaintiff properly exercised its right of first refusal can be resolved only by reference to the Right of First Refusal clause. Moreover, the rights which Plaintiff is seeking to enforce in this matter are created by (and defined by) the Right of First Refusal clause.

The terms of the arbitration clause are broad and unambiguous: "[a]ny controversy relating to the terms and conditions of this Lease, other than claims relating to nonpayment of Rent, or to recover possession of the Premises, shall be settled by arbitration." When evaluating contract language regarding arbitration, the Court must do so "in light of the strong federal policy in favor of arbitration, resolving any doubts as to the parties' intentions in favor of arbitration." *Albert M. Higley Co. v. N/S Corp.*, 445 F.3d 861, 863 (6th Cir. 2006); *see also, Nationwide Mutual Ins. Co. v. Home Ins. Co.*, 429 F.3d 640, 650 (6th Cir. 2005) ("[i]f a dispute is even arguably within the scope of arbitration clause, the dispute is arbitrable").

In sum, the Court finds that the subject of the present dispute clearly relates to the terms and conditions of the leases into which the parties entered. The present dispute must, therefore, be arbitrated pursuant to the terms of the leases. Accordingly, the present matter must be stayed to permit the parties to pursue arbitration. *See* 9 U.S.C. § 3.

**CONCLUSION**

For the reasons articulated herein, Defendants' Motion to Compel Arbitration, (dkt. 17), is **granted** and this matter stayed pending completion of arbitration. An Order consistent with this Opinion will enter.

Date: June 28, 2006

/s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge